**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-30266 |
| Plaintiff-Appellee, | D.C. No. 4:08-cr-00126-SEH-1 |
| v. | |
| ROBERT DARRYL WAR CLUB, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted August 29, 2012
Seattle, Washington

Before: SCHROEDER and GOULD, Circuit Judges, and RAKOFF, Senior District Judge.[**]

Robert Darryl War Club appeals his conviction for the murder of Richard

Green, primarily on the basis of four evidentiary rulings made by the district court

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Jed S. Rakoff, Senior District Judge for the U.S. District Court for the Southern District of New York, sitting by designation.

during the trial, the dismissal of a juror after communication with a witness during trial, and the denial of his motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure. Full familiarity with the record on appeal is here presumed. We affirm the district court and deny the appeal.

Turning first to the evidentiary rulings, such rulings are reviewed for abuse of discretion, *Old Chief v. United States*, 519 U.S. 172, 174 n.1 (1997), and will not result in reversal on appeal if they are harmless. *See United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997) (en banc). If a defendant fails to object to the evidentiary ruling at trial, the issue is reviewed for plain error. *United States v. Graf*, 610 F.3d 1148, 1164 (9th Cir. 2010).

War Club first appeals the district court's exclusion of certain parts of the testimony of defense witness Jayni Anderson. War Club's theory of defense was that Richard Green's business partner and neighbor, Alvin Linville, and Linville's friend, Don Sharp, had killed Green. At trial, War Club first called Linville as a witness, and Linville not only denied any involvement in the murder but also denied telling Anderson, his friend, that he was angry at Green and wanted to kill him. War Club then called Anderson, who was permitted to testify that during the months leading up to Green's murder, she had had numerous phone conversations with Linville in which he told her that he was angry at Green because of a business dispute and that he

wanted to kill Green. Anderson further testified that on April 20, 2006, the day of Green's murder, Linville called her and told her that Green was dead before his body was found that evening. However, the district court precluded Anderson from recounting other statements that Linville had made to her and that similarly contradicted his testimony at trial, such as that Linville had told her that he had walked across the road to Green's house in the middle of the night, which made Green angry, that he had given Green's half interest in a shop to Don Sharp, and that he and Sharp were planning to go into business together growing marijuana.

It is well established that under Rule 613 prior inconsistent statements may be used to impeach the credibility of a witness. *United States v. Monroe*, 943 F.2d 1007, 1012 (9th Cir. 1991). Yet a district court retains "broad discretion over whether to admit extrinsic evidence to rebut a witness' direct testimony, particularly on a matter collateral to the case." *United States v. Chu*, 5 F.3d 1244, 1249 (9th Cir. 1993). Moreover, district courts are entitled to "wide latitude" under Rule 403 to balance the probative value of such evidence against its prejudicial effect. *United States v. Higuera-Llamos*, 574 F.3d 1206, 1209 (9th Cir. 2009). Here, we find that the district court properly excluded the above testimony because the statements that War Club sought to admit either were collateral to the central issue of whether Linville might have killed Green or (in the case of the marijuana) were unduly prejudicial. While

War Club now argues that these statements should also have been admitted under the "residual" exception of Rule 807, the total failure to make this argument at trial renders it without basis here. *See United States v. Tafollo-Cardenas*, 897 F.2d 976, 980 (9th Cir. 1990).

War Club next claims that the district court erred in admitting only for impeachment purposes Anderson's testimony regarding Linville's statements that he was angry with Green over a business dispute, that he wanted to kill Green, and that he knew Green was dead before the body was discovered, when, War Club argues, they should have been admitted as substantive evidence of Linville's then-existing state of mind under Rule 803(3). Because War Club failed to argue that these statements should be admissible for their substantive truth under Rule 803(3) at the time of Anderson's testimony, the district court's decision is subject to plain error review. *See United States v. Tisor*, 96 F.3d 370, 376 (9th Cir. 1996). While some of these statements might arguably be admissible under Rule 803(3), the error, if it were such, was not prejudicial. The district court's ruling did not prevent War Club from arguing that the only motive for Linville to lie was that he had in fact committed the murder. Indeed, if the jury had accepted defense counsel's argument on summation that Linville had intentionally lied, they would have very likely inferred that he did so because he was involved in the murder, thus exculpating War Club.

War Club next argues that the district court erred when it summarized Verizon's response to a subpoena for Anderson's phone records as indicating that Verizon had "no record of" Anderson's phone "being in use during that period of time" when she said that she had called Linville. In fact, the district court's statement was accurate; but even if it could have been misinterpreted at the time as implying that Anderson did not have a phone at the relevant time, as opposed to the defense view that Verizon simply failed to maintain such records for more than five years, the error was cured, since the subpoena response itself was read into the record and War Club then argued his interpretation of Verizon's response in his closing arguments.

War Club next challenges the district court's refusal to allow him to question Aylissa Sharp regarding child abuse allegations that Aylissa had made against her father, Don Sharp, many years earlier. War Club argues that these allegations would show that Aylissa was susceptible to Don's influence and that the trial court's refusal to allow this line of questioning violated War Club's Sixth Amendment right to confront witnesses against him. However, while "exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination," *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974), "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other

things, harassment, prejudice, . . . or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Here, the district court did not abuse its discretion in refusing War Club's line of questioning: the allegation was eight years old, so its relevance was diminished, the level of potential embarrassment and prejudice to both Don and Aylissa Sharp was great, and the inference defense counsel sought to draw from the proffered evidence was highly speculative.

In addition to the foregoing evidentiary issues, War Club appeals the district court's decision to dismiss and replace a juror on the last day of trial after the juror brought to the court's attention the fact that she had received a telephone call from Linville the prior evening that caused her to call the police. A district court's decision to replace a juror with an alternate is reviewed for abuse of discretion. *United States v. Alexander*, 48 F.3d 1477, 1485 (9th Cir. 1995). When there has been improper contact with a juror, courts apply a presumption of prejudice, even if such conduct is unintentional. *United States v. Rutherford*, 371 F.3d 634, 641-42 (9th Cir. 2004). Although the contact here was apparently accidental, and although the juror was prepared to continue to serve, the fact that the juror was sufficiently upset by the contact with Linville that she called the police showed that the threat of prejudice was real, and War Club made no attempt to rebut the presumption of prejudice.

Accordingly, we find that the district court did not abuse its discretion in dismissing the juror and replacing her with an alternate juror.

Finally, War Club appeals the district court's denial of his motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure. Objections to the sufficiency of the evidence are reviewed *de novo*. *United States v. Green*, 592 F.3d 1057, 1065 (9th Cir. 2010). Although War Club raises some factual issues that the jury could have found in his favor, none of these disputed issues, when viewed "in the light most favorable to the prosecution," rises to the level that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). While the prosecution's case was largely circumstantial, it was a strong case based on physical evidence as well as evidence tending to show War Club's motive and opportunity, and thus War Club's Rule 29 motion must be denied.

**AFFIRMED**.