No. 98-464

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 238

296 Mont. 165

P.2d 775

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DARWIN KEITH BEROSIK,

Defendant and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Julianne Hinchley, Attorney at Law, Kalispell, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Patricia J. Jordan,

Assistant Attorney General, Helena, Montana

Thomas J. Esch, Flathead County Attorney; Ed Corrigan, Deputy

Flathead County Attorney, Kalispell, Montana

Submitted on Briefs: June 10, 1999

Decided: October 5, 1999

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶ **Appellant Darwin Berosik (Berosik) appeals from the judgment and conviction of the Eleventh Judicial District Court, Flathead County.**

¶ **We affirm.**

¶ **The following issues are raised on appeal:**

¶ **1. Whether the District Court erred in denying Berosik's motion for mistrial.**

¶ **2. Whether the District Court abused its discretion in admitting a police booking form.**

Standard of Review

¶ **We review a district court's denial of a motion for mistrial to determine whether the district court abused its discretion. State v. Partin (1997), 287 Mont. 12, 951 P.2d 1002. We review evidentiary rulings to determine whether a district court has abused its discretion. Seizure of $23, 691.00 in U.S. Currency (1995), 273 Mont. 474, 905 P.2d 148.**

Factual and Procedural Background

¶ **In July, 1997 Berosik was driving north on highway 93 in the late evening with his brother, Kenneth Berosik (Kenneth), when Highway Patrol Officer Lavin stopped him because Berosik had not dimmed his brights in response to oncoming traffic. Officer Lavin saw beer cans in the car and smelled alcohol. Officer Lavin requested a driver's license, registration, and proof of insurance. Berosik said he did not have those documents and told Officer Lavin that his name was Kenneth. Officer Lavin returned to his car to check the status of Berosik's driver's license and called for backup. Officer Watson arrived within several minutes. When Officer Lavin went back to Berosik's car, he smelled alcohol on Berosik's person and had him get out of the car. Berosik appeared "uneasy on his feet;" even when he stood still "his body was swaying." Officer Lavin had Berosik perform a horizontal gaze nystagmus test (HGN). Berosik scored a six out of a possible six, suggesting that he was impaired from alcohol. While Officer Lavin returned to his car to prepare a portable breath test, Officer Watson asked Berosik's brother, Kenneth, for identification. Kenneth replied, "F-O." Kenneth got out of the car and tussled with Officer Watson while Berosik apparently encouraged Kenneth, calling him "brother" but not "Kenneth." When Berosik was told to get down on the ground, he struggled with the officers. Eventually, Officer Watson subdued the Berosik brothers with pepper spray, and**

both brothers were arrested.

¶ That same night, Anderson, a detention sergeant, observed Berosik after his arrest. Sergeant Anderson had seen Berosik previously when he was sober and when he was intoxicated. She concluded that he was intoxicated. She described his condition on a booking form.

¶ In September, 1997 Berosik was charged with Driving Under the Influence of Alcohol (DUI), Resisting Arrest, and Habitual Offender Operating a Motor Vehicle. Berosik pled guilty to the Habitual Offender charge and proceeded to trial on the DUI and Resisting Arrest charges. In December, 1997 the State filed a *Just* notice, signaling its intent to move for the admission at trial of evidence regarding an alleged prior DUI in April, 1997. Berosik responded by filing a motion *in limine*, seeking to exclude evidence regarding the prior DUI under Rule 404(b), M.R.Evid. In March, 1998, on the first day of Berosik's trial, the District Court granted Berosik's motion *in limine*. However, at trial, the District Court admitted evidence that Berosik contended was in violation of the motion *in limine* ruling, prompting Berosik to move for a mistrial. The District Court denied the motion. Berosik appeals.

¶ 1. Whether the District Court erred in denying Berosik's motion for mistrial.

¶ Berosik argues that the District Court abused its discretion in denying his motion for a mistrial. First, Berosik claims that the evidence admitted failed to satisfy the standards that this Court has recognized for the admissibility of evidence under Rule 404(b), M.R.Evid. Second, Berosik argues that under State v. Partin (1997), 287 Mont. 12, 951 P.2d 1002, a mistrial is appropriate because the motion *in limine* was violated, the evidence against him was weak and conflicting, and there is a reasonable possibility that the Rule 404(b) evidence contributed to his conviction.

*A. The State's questions to Berosik about the penalties he faced for a DUI.*

¶ During its cross-examination of Berosik at trial, the State asked Berosik why he identified himself to Officer Lavin as Kenneth. Berosik testified that he wanted to avoid getting a ticket or being arrested for not having a license. However, Berosik further testified that he was not worried about getting a DUI. The State asked Berosik several times whether he was worried about the penalties he would face if convicted of DUI. For example, the State asked, "You knew we were talking about

years?" Berosik objected that the question was "asked and answered."

¶ Berosik argues that the State improperly signaled the jury that he is a "multiple D. U.I. offender," violating the "spirit" of Rule 404(b), M.R.Evid. Berosik appears to argue that because the State alluded to the possibility that Berosik faced years in jail and on probation, some members of the jury would have inferred that this was not Berosik's first DUI arrest because of their knowledge of the "escalating consequences for D.U.I.[s]."

¶ The State responds that in asking Berosik about the substantial penalties for a DUI, it properly inquired into Berosik's motives for lying about his identity to the highway patrol officer and Berosik's "consciousness of his guilt." The State argues further that Berosik was not prejudiced because on direct examination he testified that he had been in jail for almost eight months before his trial, opening the door to the admission of the consciousness of guilt evidence. The State also argues that Berosik failed to object contemporaneously, thus waiving his objection.

¶ We conclude that Berosik has failed to preserve this issue for our review. Berosik objected that the State's question was "asked and answered." However, Berosik did not object on any of the grounds that he now claims as error on appeal. *See* Unified Industries, Inc. v. Easley, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15 (concluding "[t]he general rule in Montana is that this Court will not address either an issue raised for the first time on appeal or a party's change in legal theory") (citation omitted).

*B. Admission of the HGN and breathalyzer evidence.*

¶ At trial, Berosik testified that as a boy he was struck in his left eye by a double-bladed axe. Berosik also testified that when he was sixteen, he received flash burns to his eyes from welding. On cross-examination, the State asked Berosik whether he was saying that the HGN test was not valid because of his eye problems, and Berosik responded, "yes." The State asked whether Berosik had "that childhood injury and those retinal burns in the month of April 1997." Berosik responded that he did. The State requested a side bar and moved to introduce evidence regarding Berosik's scores on the HGN and breathalyser tests during the alleged prior April, 1997 DUI. The District Court concluded that Berosik had opened the door to that evidence in testifying on direct examination about his eye condition. The State then asked

Berosik whether it was true that "in a matter of months prior to this incident, an HGN test was performed on you at night, showed you to be impaired, and the fact that you were impaired was then confirmed by a breath test?" Berosik responded, "Yes."

¶ Berosik argues that this evidence violated the District Court's grant of his motion *in limine.* Berosik argues that the association between his April, 1997 HGN and breathalyzer test results does not prove that his HGN test result in the present case accurately reflected his alcohol consumption. Berosik also argues that admission of the April, 1997 test results violated Rule 404(b), M.R.Evid., which provides in part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes . . . ." Berosik argues further that he did not open the door to evidence of the April, 1997 tests; rather, the State elicited comments from Berosik about the validity of the HGN test.

¶ The State responds that the motion *in limine* order barred the admission of evidence of the April, 1997 police stop of Berosik only for the purpose of showing that he then gave a false name and birth date to police. The State argues that the evidence of Berosik's April, 1997 HGN and breathalyser tests was admissible to impeach Berosik or to rebut his contention that the HGN test result in the present case was invalid because of his eye injuries. Further, the State contends that evidence of a prior crime or act is admissible under Rule 404(a)(1), M.R.Evid., when a defendant opens the door with an assessment of his nature or character. Rule 404(a)(1) provides in part that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except: . . . [e]vidence of a pertinent trait of character offered by an accused . . . ."

¶ We conclude that the District Court abused its discretion in admitting the April, 1997 HGN and breathalyzer results. Even assuming *arguendo* that Berosik's testimony opened the door to rebuttal of his criticism of the HGN test as applied to him, the April, 1997 test results did not rebut Berosik's suggestion that he scored highly on the HGN because of his eye injuries. The April, 1997 test results are not inconsistent with Berosik's criticism of the HGN test as applied to him. Under Berosik's critique of the HGN test, he could be expected to score significantly on the HGN regardless whether he had consumed alcohol. Thus, the April, 1997 test results

had at most a negligible probative value that was substantially outweighed by the risk of "confusion of the issues." Rule 403, M.R.Evid. Having concluded that the District Court abused its discretion, we must determine whether the District Court's error prejudiced Berosik's substantive rights.

¶ **We have previously concluded that**

> a judgment of conviction will not be reversed unless the error prejudiced or tended to prejudice the substantive rights of the defendant. We have further held that in criminal cases no judgment will be reversed for technical errors or defects which do not affect the substantial rights of the defendant, and when the record is sufficient to establish the guilt of the defendant, a new trial will not be granted, even though there was error, unless it clearly appears that the error complained of actually impaired the defendant's right to a fair trial.

State v. Huerta (1997), 285 Mont. 245, 251-52, 947 P.2d 483, 487 (citations omitted). Further, § 46-20-701(2), MCA, provides that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."

¶ **We conclude that the District Court's error was harmless. Berosik has not shown that the District Court's error prejudiced any of his substantive rights or that it impaired his right to a fair trial. Even without the April, 1997 HGN and breathalyzer test results, there was overwhelming evidence from which a jury could conclude that Berosik was guilty, including testimony by the arresting officers that Berosik appeared intoxicated and smelled of alcohol and by the booking Sergeant that Berosik appeared intoxicated, Berosik's high HGN score, and Berosik's dubious testimony that he drank two beers before seeing stockcar races, that he drank only soft drinks during the stockcar races, and that he allowed himself one beer around the time of the last race but was bumped, causing him to spill beer on himself. In addition, Berosik admitted that he lied to police about his identity.** *Compare* **Brodniak v. State (1989), 239 Mont. 110, 115, 779 P.2d 71, 74 (recognizing the overwhelming evidence rule as one method "to ascertain whether there is a reasonable possibility that the inadmissible evidence contributed to the verdict") (citations omitted); State v. Graves (1995), 272 Mont. 451, 460, 901 P.2d 549, 555 (concluding district court's admission of police dispatcher's testimony about 911 call was harmless error in light of other evidence that was properly admitted).**

## C. *Hearsay testimony of Kenneth.*

**¶ Officer Watson testified:**

> He [Kenneth Berosik] told me that he didn't want us to be able to identify him because he knew that his brother had already used his name as his own, and if we found out who he really was, we'd realize that he was going to get another D.U.I., and one more would not be good for him.

**¶ Berosik contends that the District Court abused its discretion in admitting this testimony and that the testimony violated the District Court's grant of his motion *in limine*. Berosik appears to argue that the motion *in limine* barred the admission of any prior crime, that Kenneth's testimony was proof of another crime, and that it violated Rule 404(b).**

**¶ The State responds that the District Court did not abuse its discretion in admitting Officer Watson's testimony. The State argues that Officer Watson's testimony rebutted Berosik's claim that he was not worried about a DUI and that the testimony was admissible to show Berosik's consciousness of guilt.**

**¶ We conclude that Officer Watson's testimony did not violate the motion *in limine*. The testimony regarding "another DUI" did not specifically reference the alleged April, 1997 DUI. Moreover, Berosik is mistaken in his contention that the District Court's grant of his motion *in limine* barred the admission of prior crime evidence for any purpose. As previously discussed, Berosik's motion *in limine* requested that no mention be made at trial of the alleged April, 1997 DUI incident. In granting the motion *in limine*, the District Court concluded that whether Berosik had used his brother's name when he was arrested in April, 1997 "doesn't make it more probable that that's what he was doing this time" and that his alleged prior use of his brother's name had only "very marginal" relevance. The District Court determined that the State could not use the alleged April, 1997 DUI incident to show that Berosik had previously used his brother's name.**

**¶ We note that Berosik's counsel then asked, "I take it, then, our intent is we will not talk about priors in any fashion?" The District Court responded, "that's my**

impression." However, the record reveals that Berosik's counsel again attempted to articulate the District Court's ruling, stating "just so we understand the general philosophy is 'we'll try it with a misdemeanor DUI with no prior.' " The State agreed but pointed out that Berosik could not "try to 'BS' the jury with purity." The District Court then commented that if Berosik opened the door to prior crimes evidence, the District Court expected that the State would first talk with Berosik's counsel and the District Court. Thus, Berosik's contention that the motion *in limine* barred mention of prior crimes for any purpose is not plausible. The record clearly establishes that the parties contemplated circumstances in which prior crimes could be admitted, that the District Court explained the specific grounds on which it had granted the motion *in limine,* and that Berosik's motion *in limine* addressed only the alleged April, 1997 DUI.

¶ We hold that Officer Watson's testimony was properly admitted for the distinct purpose of showing Berosik's consciousness of guilt. Rule 404(b), M.R.Evid. does not apply to evidence of consciousness of guilt. We have previously concluded:

> It should be first noted that the admissibility test and the procedural requirements of State v. Just do not apply to evidence establishing consciousness of guilt regarding the crime with which the defendant is charged. We have said numerous times that testimony showing or tending to show flight or concealment by the defendant may be taken into consideration by a jury in determining whether the defendant is guilty of the offense charged. . . . The evidence is relevant because it tends to show consciousness of guilt and therefore tends to prove the commission of the crime charged and the defendant's responsibility for it. Rule 404(b), M.R.Evid., as to other crimes, does not apply.

State v. Moore (1992), 254 Mont. 241, 245, 836 P.2d 604, 607. In the present case, Officer Watson's testimony tended to show Berosik's consciousness of his guilt and thus tended to prove his commission of the crime with which he was charged. Moreover, we conclude that Berosik was not prejudiced by Officer Watson's testimony because of the previously discussed overwhelming independent evidence from which a jury could reasonably conclude that he was guilty.

¶ Finally, we consider whether the District Court erred in denying Berosik's motion for a mistrial. We review a district court's denial of a motion for mistrial to

determine whether the district court abused its discretion. *See* State v. Partin (1997), 287 Mont. 12, 17-18, 951 P.2d 1002, 1005. The Court in *Partin* determined that "[t]he general rule is that, where there is a reasonable possibility that inadmissible evidence might have contributed to the conviction, a mistrial is appropriate." *Partin*, 287 Mont. at 18, 951 P.2d at 1005.

¶ In the present case, we need only consider whether the District Court's admission of the HGN and breathalyzer evidence denied Berosik "a fair and impartial trial." *Partin*, 287 Mont. at 16, 951 P.2d at 1004. Berosik's other grounds for a mistrial are without merit: as previously discussed, Rule 404(b), M.R.Evid. does not apply to Officer Watson's statement and Berosik failed to preserve his objection to the State's questions about the penalties for DUIs.

¶ We must determine whether there is a reasonable possibility that the evidence of Berosik's April, 1997 HGN and breathalyzer test results contributed to Berosik's conviction. *See Partin*, 287 Mont. at 18, 951 P.2d at 1005 (concluding "where there is a reasonable possibility that inadmissible evidence might have contributed to the conviction, a mistrial is appropriate"). As previously discussed, there was overwhelming independent evidence from which a jury could reasonably conclude that Berosik was guilty. *Compare Partin*, 287 Mont. at 21, 951 P.2d at 1007 (concluding "evidence against Partin was weak and conflicting[:] . . . the stronger the evidence against the defendant, the less likely it is that a reference to other charges or a prior arrest will have a prejudicial effect"). In light of the overwhelming independent evidence of Berosik's guilt, we conclude that there is not a reasonable possibility that the admission of the HGN and breathalyzer evidence contributed to Berosik's conviction. We hold that the District Court did not abuse its discretion in denying Berosik's motion for a mistrial.

¶ 2. Whether the District Court abused its discretion in admitting a police booking form.

¶ Berosik argues that the booking form prepared by Sergeant Anderson was double hearsay. Berosik argues further that the booking form is an investigative report that falls outside the exception to the hearsay rule under Rule 803(8), M.R.Evid., that the booking form met no exception to the hearsay rule, and that admission of the booking form was unnecessary because Sergeant Anderson was available to testify. Berosik cites this Court's decision in State v. Zackuse (1992), 253 Mont. 305, 833 P.2d

¶ The State responds that the booking form was not double hearsay and that it was admissible as the recorded present sense impressions of Sergeant Anderson. The State argues further that even if the District Court erred in admitting the booking form, the error was harmless because the booking form was merely cumulative of other witness' testimony.

¶ The District Court admitted the booking form as a recorded present sense impression under Rule 803(1), M.R.Evid. Rule 803(1), M.R.Evid., provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

Rule 803(1), M.R.Evid.

¶ In City of Helena v. Hoy (1991), 248 Mont. 128, 809 P.2d 1255, a police officer took handwritten notes on a printout card, recording the calibration and results of a breathalyzer test. The Court in *Hoy* determined that the officer's testimony regarding her handwritten notes was admissible as a present sense impression, concluding that "[t]he numbers Officer Badger recorded on the printout card were a written assertion describing a condition, namely appellant's blood alcohol content results, made at the time she was perceiving the event or condition." *Hoy*, 248 Mont. at 131, 809 P.2d at 1257.

¶ We note in the present case that the booking form was not "double hearsay;" it is not a combined statement or hearsay within hearsay but rather a form with Sergeant Anderson's observations of Berosik. Further, Berosik's reliance on *Zackuse* is simply misplaced. In *Zackuse*, the Court concluded that the district court did not abuse its discretion by admitting a State Crime Lab Form as "evidence of [the investigating officer's] receipt of the drug evidence from the State Crime Lab." *Zackuse*, 253 Mont. at 309, 833 P.2d at 145.

**¶ In the present case, the record establishes that Sergeant Anderson's notes on the booking form were based on her personal observations of Berosik. The record appears to indicate and Berosik does not dispute that Sergeant Anderson recorded her observations while she observed Berosik or "immediately thereafter." Rule 803 (1), M.R.Evid. Moreover, when the State moved to admit the booking form, Sergeant Anderson had already testified about Berosik's condition when she observed him:**

> Q. Do you remember what your impression was of [Berosik's] condition?

> A. Yeah. My impression was he was intoxicated.

Following the District Court's admission of the booking form, Berosik conducted a full cross-examination of Sergeant Anderson. We hold that the District Court did not abuse its discretion in admitting the booking form as a recorded present sense impression. Because this holding is dispositive, we do not address Berosik's other objections to the admission of the booking form.

**¶ The judgment of the District Court is affirmed.**

/S/ W. WILLIAM LEAPHART

We concur:

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER